MANUEL BENÍTEZ FLORES ET AL., Plaintiffs and Appellees, v JULIO V. LLOMPART, Defendant and Appellant.

No. 6852. Argued June 3, 1936.—Decided November 30, 1936.

642

*Dubón & Ochoteco* for appellant. *A. Ayuso* for appellees.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

The plaintiff spouses brought an action for damages caused them by the defendant in refusing to perform the following contract:

"We, Julio V. Llompart and Manuel Benítez Flores, do hereby agree on the following contract: Julio V. Llompart buys the house and three acres (*cuerdas*) of land of the property in Monacillo, Río .Piedras, for the amount of EIGHT THOSAND DOLLARS ($8,000). Mr. Llompart will pay this amount in the following manner: Mr. Llompart will assume the mortgage of $6,000 which encumbers the property, for payment and cancellation in not less than four years. He will also deduct past due interest on the mortgage, and the taxes up to date. And the balance of the purchase price will be paid in cash by Mr. Llompart upon the signing of the deeds. This being the agreement of the parties, they willingly sign the same in this city of San Juan, this 29th day of August, 1932.—(Sgd.) Julio V. Llompart.—M'l Benítez Flores.—I agree to extend the mortgage for four years, to be secured by the same area of land and on the existing condition, as appears from the mortgage deed originally executed by Dr. Bernabe.—San Juan, P. R., August 30, 1932.—(Sgd.) Amelia P. Vda. de Woods.—By N. Pasarell."

The record shows that Mrs. Benítez Flores· purchased the property which is the object of this action from the spouses

Bernabe on April 29, 1931, and that the purchaser retained $6,000 of the price agreed upon, to pay a mortgage for that amount which encumbered the property, in favor of Amelia Palmieri, Widow of Woods, and which was to fall due on November 4, 1932. The property in question contains seven and one-half acres *(cuerdas)*, and a house built of concrete and wood.

The other essential facts of the complaint amply supported by the evidence are: that the plaintiffs were owners of the farm, but for convenience they made it appear as belonging to Frank López de la Rosa and his wife, this fact being known to the defendant and to the mortgage creditor Mrs. Woods; that the mortgage having become due, the plaintiffs decided to sell a part of the property to obtain money to pay the interest due on the mortgage, past due taxes and to erect other buildings on the rest of the property, and it was for this purpose that they entered into the contract with the defendant; that before making the said contract, the plaintiffs and the defendant conferred with Frank López de la Rosa, who agreed to execute a deed of conveyance to the defendant whenever requested to do so; that the consent of the mortgage creditor to extend the mortgage for four years was obtained; that at the instance of the defendant the plaintiffs moved from the property before September 22, 1932, and on that date they delivered it to the defendant, leaving it at his disposal, it being agreed between the parties that the deed would be signed on September 24, 1932; that the act of signing the deed was postponed to another day at the request of the defendant; that early in October next the plaintiffs required the defendant to sign the deed of conveyance, which the defendant refused to do; that as a consequence of the refusal of the defendant Mrs. Woods, the mortgage creditor, proceeded to foreclose the mortgage, the plaintiffs being unable to save the property or any part thereof; that the plaintiffs have lost the rest of the property, that is, the four and one-half acres

*(cuerdas)* that they had reserved in accordance with the contract, which are valued at $4,750, and they have also lost the $2,000 which the defendant was to pay in cash when the deed was signed. Judgment for $6,750 is requested against the defendant.

The defendant demurred to the complaint, on the following grounds: (*a*) defect of parties plaintiff, because inasmuch as the property was in the name of Frank López de la Rosa and his wife, both should have been included as plaintiffs; (*b*) defect of party defendant because Mrs. Woods has not been made a party; and (*c*) the complaint does not state facts sufficient to constitute a cause of action against the defendant.

The demurrers overruled, the defendant answered the complaint, denying the facts alleged generally and specifically, and setting up certain special defenses.

The district court rendered judgment ordering the defendant to pay to the plaintiffs the sum of $3,000 as damages caused by the breach of the contract. From this judgment the defendant has taken the present appeal.

Among the errors assigned to the lower court only the following merit consideration:

(1) *That the court erred in overruling the demurrer for alleged defect of parties plaintiffs and party defendant.*

It was alleged in the complaint that the true owners of the property were the spouses Benítez Flores, the plaintiffs, and that the title was in the name of Frank López de la Rosa and his wife, because this was more convenient for the true owners, a fact known to the defendant.

Section 51 of the Code of Civil Procedure provides that every action shall be brought in the name of the real party in interest. Manuel Benítez Flores, as a party to the contract of August 29, 1932, and he and his wife as true owners of the property which was the object of the contract, are

the only parties really interested in the action for damages caused by the defendant in refusing to comply with the terms of the contract. Mr. López de la Rosa, who merely held title, is not an interested party in an action for breach of a contract of sale entered into by the true owner of the property, with another person who at the time the contract was made had exact knowledge of the facts, as the defendant did have. If this were an action brought by the purchaser to bind the vendor to specific performance of the contract, then indeed it could be argued successfully that the holder of the title should be a party defendant, so that he could be compelled to convey the title to the plaintiff purchaser. But in the instant case we are of the opinion that the lower court did not err in holding that the spouses López de la Rosa were not necessary parties plaintiff in the action brought.

Still less meritorious is the demurrer based on the alleged defect of a party defendant, because the mortgage creditor, Mrs. Woods, was not included as such. The action brought is not directed against Mrs. Woods. The judgment prayed for in the complaint cannot affect her in any way. And since the said mortgage creditor has no interest in the controversy opposed to that of the plaintiffs, she was not a necessary party to the suit, nor could she be made a defendant. See Section 63 of the Code of Civil Procedure.

The contract of August 29, 1932, was made for the purpose, among others, of avoiding foreclosure of the mortgage held by Mrs. Woods, and extending it for four years, by payment of the interest pending up to the date of the contract, which the defendant agreed to pay with a part of the purchase price which he retained in his possession for that purpose. The breach of the contract by the defendant left Mrs. Woods at liberty to foreclose the mortgage. Mrs. Woods was not the originator of the damages suffered by the plaintiffs. She did nothing but exercise her right as mortgage creditor. It was the defendant who, by refusing to perform his obliga-

tion, caused the damage for which the lower court has ordered reparation.

The lower court did not err in holding that Mrs. Woods was not a necessary party to the action.

(2) *That the lower court erred in holding that on August 29, 1932, the date of the contract, the plaintiffs were the owners of the property.*

In accordance with the terms of the contract between the parties, the defendant bought the house and three acres *(cuerdas)* of land of the property in question, acknowledging the plaintiff Benítez Flores as the owner of the property.

Witness Nathaniel Pasarell, son of the mortgage creditor Mrs. Woods, testified that he had talked with the defendant Llompart in regard to the contract; that the defendant told him that he had entered into the contract with the firm intention of buying the property; that at the suggestion of the defendant he spoke to the attorney for the defendant, Mr. Dubón, in regard to the execution of the deed and that the said attorney told him that everything was ready, that the titles seemed to be in order and that they were waiting to sign the deed; that they agreed that the deeds be prepared by Notary Iglesias; that the latter prepared the deed immediately, but when they took it to the defendant Llompart the latter refused to sign it because the property had suffered damages from the cyclone; that his mother was willing to sign the deed because she was to collect past due interest and the taxes pending were also to be paid, all of which was to be paid with the cash which Mr. Llompart had agreed to pay; that after Mr. Llompart had refused to close the transaction, the witness found it necessary to foreclose the mortgage, the property having been adjudicated to the mortgage creditor; that the witness informed the defendant of the details of the taxes and interest pending and that the defendant had been agreeable.

Witness Frank López de la Rosa testified that the property of Monacillo Ward, although in his name, belonged to plaintiff Benítez Flores; that he intervened in the deal with defendant Llompart, for the latter went to him for information as to the status of the property and the witness informed him as to why it was recorded in his name; that the witness informed the defendant as to the debt for interest and taxes; that the witness had been willing to sign and did actually sign the deed in favor of Llompart and that the witness' wife also signed it; that when he informed Llompart as to what was due for taxes and interest on the property, the defendant said to him: "Well, I'll clear that".

Dr. Rafael Bernabe testified that early in September, 1932, before the cyclone, he spoke with the defendant to whom he said: "My boy, I congratulate you on the purchase you have made. You have made a good deal"; that the defendant said to him: "Yes, I think I have."

The plaintiff testified that in discussing the terms of the contract with the defendant he informed the latter that he was bound to sell the property because the interest on the mortgage was past due; that he also informed him that he had recorded the property in the name of López de la Rosa in order to obtain money to bring the interest up to date and to pay the past due taxes on the property, which had been, or was then about to be sold by the Treasurer for taxes; that the witness had a year to redeem the property, and that he made the deal with the defendant in order to save a part of the property; that the defendant was informed of everything and agreed that the interest and taxes pending should be entirely paid from the price agreed upon.

The lower court did not err in holding that the plaintiffs had a transferable right or interest in the property, since while it is true that it had been adjudicated to the People of Puerto Rico in payment of taxes, it is no less true that the plaintiffs had an equitable title, which gave them the right to redeem the property. The defendant knew this fact and

knew that what he was actually buying was the right to redeem the property by paying the taxes for which the sale had been made, with the interest and costs fixed by law.

 (3) *That the contract between the parties was not a contract of sale but was a contract to sell.*

The lower court reached the legal conclusion that the contract in this action is a contract of sale, binding on both parties, and that the circumstance that the deed was not signed on the same day that the contract was made in no way lessens the binding effect of the agreement between the parties. We agree with this construction.

 The two questions which we must consider and decide are:

1. When is dominion title (*dominio*) to the property transferred to the purchaser: at the time the contract is perfected, or at the time the sale is consummated?

2. For whose account is the loss of the property which occurs after the contract is perfected but before it has been consummated?

Sections 1334 and 1339 of the Civil Code, 1930 ed., equivalent to Sections 1445 and 1450 of the Spanish Code provide:

"Section 1334.—By a contract of purchase and sale one of the contracting parties binds himself to deliver a specified thing and the other to pay a certain price therefor in money or in something representing the same.

"Section 1339.—The sale shall be perfected between vendor and vendee and shall be binding on both of them, if they have agreed upon the thing which is the object of the contract and upon the price, even when neither has been delivered."

Examining the contract in this case in the light of the provisions of the Sections of the Civil Code cited, there can be no doubt that it was a contract of sale. The defendant did not agree to buy, he *bought,* a house and three acres (*cuerdas*) of land for the agreed price of $8,000, which he promised to pay by assuming a mortgage, its interest and

pending taxes and offering to pay the balance in cash when the deeds were signed. On this point Manresa says:

"The judgment of March 8, 1901 says that this contract being consensual, is perfected by the agreement on the price and the thing, and is consummated by the reciprocal delivery of both, and the transfer to the purchaser of full dominion title to the thing sold, from which moment the actions derived from this right may be brought; . . . " Manresa, Volume X (4th ed.) p. 12.

See: Scaevola, Volume XXIII, p. 317.

There is no doubt that the full dominion title to the thing sold is not transferred to the purchaser until the contract has been consummated by the reciprocal delivery of the price and the thing. Section 549 of the Civil Code, 1930 ed.

▮ Let us see now, on whom. does the loss of the thing sold, or the damages caused to it, after the contract has been perfected but before it has been consummated, fall.

We must accept as established and indisputable facts that the contract in this case was perfected when the parties signed the document on which the complaint is based; and that the damages suffered by the thing sold were caused after the contract was perfected but before it was consummated. Who then, must suffer the loss of or damage to the thing sold?

Section 1341 of our Civil Code (1930 ed.), equivalent to Section 1452 of the Spanish Civil Code, says:

"Section 1341.—The injury to or the profit of the thing sold shall, after the contract has been perfected, be governed by the provisions of section 1049 and 1136.

" . . . . . . . . . . ."

Sections 1049 and 1136 of the same code read:

"Section 1049.—Should the thing to be delivered be a specified one, the creditor, independently of the right granted him by section 955, may compel the debtor to make the delivery.

"Should the thing be undetermined or generic he may ask that the obligation be fulfilled at the expense of the debtor.

"Should the person obligated be in default, or be bound to deliver the same thing to two or more different persons, he shall be liable therefor with regard to unforeseen events until the delivery is made.

" . . . . . . . . .

"Section 1136.—An obligation, consisting in the delivery of a specified thing, shall be extinguished when said thing should be lost or destroyed without fault of the debtor and before he should be in default."

In his commentaries on Section 1452 of the Spanish Civil Code, Scaevola says, on pages 340 and following of volume 23:

"That is to say, if only the debtor (vendor in this hypothesis) is responsible for fortuitous events in the two contingencies provided for in Section 1096 (default or obligation to deliver the thing to two or more different persons) and when he has been to blame for the loss of the thing (foreseen in Section 1182), *in other contingencies, the damage or benefit to the thing sold, after the contract of purchase and sale has been perfected and before it has been consummated shall correspond to the purchaser,* who, as may be seen and deduced is charged, especially in case of damage, with the consequences of not having claimed and obtained, within the agreed term or the legal supplementary term, the delivery of the thing granted to him in the contract, which was binding and effective from the time that the vendor and the purchaser agreed on the thing and its price.

. . . . . . . . .

"*On the strength of what has been stated we can affirm that if the legal doctrine of the Code is that the transfer of dominion title to the thing sold does not operate until the consummation of the contract, the case which we are studying does not follow the legal maxim 'res perit domino', since, according to the Section discussed the risk of the thing sold passes to the purchaser although he may not have taken possession of it.* Perhaps it was to overcome this apparent antithesis that Section 981 of the Bill of 1851 provided that the delivery of the thing was not necessary to the transfer of the property, a doctrine concordant with that of several foreign Codes; *but the antithesis becomes harmony, considering that from the moment the vendor and the purchaser agree on the thing and the price and the contract is thereby perfected, the purchaser has a right to the thing, and it must be supposed that if he does not take*

*immediate possession it is because he considers it safeguarded just
as if the transfer giving rise to the 'ius in re' had been made.''*
(Italics ours.)

The evidence presented in the instant case shows clearly
that the vendor was not in default and that on the contrary
it was the purchaser who delayed the execution of the deed,
later refusing to sign it on the ground that the property had
been damaged by a cyclone which occurred after the con-
tract had been perfected.

 The damages claimed by the plaintiff are not too
remote. Those damages could have been foreseen by the
defendant as a necessary and inevitable consequence of his
failure to perform. The defendant Llompart knew that the
plaintiff had a pressing need to sell the house and a part of
the property, in order to avoid foreclosure of the mortgage
held by Mrs. Woods, and to raise funds to pay the taxes
due to the Insular Treasury; and he also knew that if the
contract was consummated as agreed, the plaintiff would be
free of the obligations of the property and would also keep
for himself a parcel of more than four acres *(cuerdas)* of
land. The defendant should have presumed that the direct
and inevitable consequences of his failure to perform the
contract would be to leave Mrs. Woods free to proceed, as
she did, to foreclose the mortgage on the entire property
and deprive the plaintiff of the benefit of the parcel of land
which he had reserved for himself in accordance with the
contract.

We do not believe that the amount of damages granted
by the lower court is excessive.

The judgment appealed from must be affirmed.

Mr. Chief Justice Del-Toro and Mr. Justice Córdova
Dávila took no part in the decision of this case.